## SOUTHERN PAC. CO. v. BARTINE et al.

(District Court, D. Nevada. October 11, 1913.)

No. 2–A.

**1. Carriers ⟨key⟩12(6½)—Order reducing passenger rates held broader than issues framed.**

On hearing before state Railroad Commission to determine reasonableness of passenger rates, where issue framed by commission itself involved only question of reducing rates over main line to 3 cents and over a so-called Nevada and California line to 4 cents, an order reducing rates on "the main line and the standard gauge branch lines" to 3 cents was broader than the issue involved, and invalid.

**2. Carriers ⟨key⟩12(6½)—Railroad Commission, though exercising legislative function, must act within prescribed manner.**

Though fixing of a passenger rate is legislative function, Railroad Commission's powers are not as broad as the Legislature's, and it must act in manner prescribed by statute.

**3. Carriers ⟨key⟩12(6½, 7)—Burden on party attacking rate to show unreasonableness; carriers entitled to hearing in case of attack on rates.**

The burden is on a party attacking rate before Nevada Railroad Commission to show its unreasonableness; defendant carrier being entitled to be heard, to have process to compel attendance of witnesses, to introduce evidence, and to rebut or explain evidence adduced against it.

**4. Carriers ⟨key⟩12(6½) — Railroad Commission's consideration of data not admitted on hearing held to invalidate order.**

Consideration by Railroad Commission, in fixing passenger rates, of data compiled by Interstate Commerce Commission, but not introduced in evidence, *held* improper, and sufficient to invalidate order based thereon, notwithstanding such matter was clearly relevant and material, had it been properly admitted.

In Equity. Bill by the Southern Pacific Company against H. F. Bartine and others, to enjoin enforcement of order of Nevada Railroad Commission reducing passenger fares. Injunction granted.

See, also, 170 Fed. 725.

C. W. Durbrow and Henley C. Booth, both of San Francisco, Cal., and George S. Brown, of Reno, Nev. (W. F. Herrin, of San Francisco, Cal., of counsel), for complainant.

Geo. B. Thatcher, Atty. Gen., of Nevada, for defendants.

FARRINGTON, District Judge. The Southern Pacific Company has filed its bill in this court to enjoin the enforcement of an order made by the Railroad Commission of Nevada, reducing local one-way passenger fares from 4 cents a mile on its main line, and from 5 cents a mile on its standard-gauge branch lines within this state, to 3 cents a mile.

Complainant pleads that the order directly, and by its necessary operation, interferes with and burdens interstate commerce; that it reduces the revenues of the company to such an extent as to be confiscatory, and is arbitrary, unjust, and unreasonable; that the statute under which the order was made is unconstitutional, because of the excessive penalties imposed upon railroad companies failing to obey orders of the commission; that the order is beyond the issues raised in the citation and framed by the commission at the opening of the proceedings held before that body; and, finally, the order itself is not supported by, and is contrary to, the evidence.

It is further contended that the order, if enforced, will work irreparable injury to complainant in this: It will require at least $5,500 to print tariffs to comply with the order of the commission, the orders of the Interstate Commerce Commission, and the interstate commerce law; that it will require the Southern Pacific Company to reduce its interstate rates; that the company will be compelled to arrange divisions with its Eastern connections, and, in the event the order is not sustained on final hearing, the company will be obliged to appear before the Interstate Commerce Commission and ask leave to raise the interstate rates to their former basis; and that it will be impossible to recover from passengers the difference between the rates now charged and the rates which they will pay under the order.

As to the objection that the penalties prescribed by the statute are excessive, complainant declares that it relies thereon only as it bears on the claim of irreparable injury. It is admitted that the question of interference with interstate commerce is foreclosed by the recent decision of the Supreme Court in the Minnesota Rate Case; that the only showing of confiscation set out in the bill, or which complainant is prepared to make, is by a method which in the same decision has been disapproved. The questions of confiscation and interference with interstate commerce must therefore for the present be laid aside.

Complainant now contends that, notwithstanding the elimination of all questions of confiscation and interference with interstate commerce, it is still entitled to an injunction pendente lite, because the order is void, in that it is beyond the issues defined by the commission, and is unsupported by and contrary to the evidence which was before the commission, and which they could prop-

erly take into consideration. The proceedings were commenced by the commission on its own initiative. There were no formal pleadings. A citation was issued and served on the Southern Pacific Company. So far as material it reads as follows:

"It appearing to this commission that your entire schedule of intrastate passenger fares within the state of Nevada may be unreasonable and unjustly discriminatory, and that investigation thereof should be made, you are hereby notified that upon the 12th day of July, 1911, at 11 o'clock a. m., an investigation of said schedule of rates and the whole thereof will be had for the purpose of determining the reasonableness of said fares and rates and whether they are unjustly discriminatory. You are therefore formally cited to appear at said investigation and take such part therein as you may deem proper This proceeding will be had under the provisions of subdivision (b) of section 12 of the Railroad Commission Law of the state of Nevada.

At the hearing the issues were framed and defined by the commission in a colloquy which reads thus:

"Mr. Squires: * * * We are to combat the proposition that a 3-cent fare is what is in your mind.

"Chairman Bartine: And also understand that we are not formally committed to that proposition.

"Mr. Squires: We are to meet the proposition that a 3-cent rate on the main line of the Southern Pacific would be, in our view, unfair, and assuming that the commission desires to get information upon that subject.

"Chairman Bartine: Of course, you also understand, Mr. Squires, that, even if we had fixed upon a 3-cent rate absolutely, we should not feel bound by that, if the investigation showed that a 3½-cent rate would be fair, you understand. * * *

"Mr. Squires: We will direct our testimony to that point, that a 3-cent rate is the one desired by the commission. If Mr. Fee will be sworn.

"Chairman Bartine: One moment. Commissioner Shaughnessy suggests that, inasmuch as the citation refers to your entire schedule of passenger fares in this state, that of course would include the Nevada & California, where you have a 5-cent schedule. You should direct your evidence to showing why that 5-cent rate should not be reduced to 4.

"Mr. Squires: That may require the compilation of some further statistics. Mr. Fee

will, of course, go over that in his testimony. * * *

"Q. I will ask you now to state to the commission your views with reference to that situation, keeping in mind that the proposition here is to reduce the passenger fares on the main line and on the Nevada & California line to 3 cents per mile. State it in your own way and follow the situation out logically as you choose for their information.

"Chairman Bartine: That is, 3 cents on the main line and 4 cents on the Nevada & California.

"Mr. Squires: Three cents on the main line and 4 cents on the Nevada & California."

[1] Thus the Southern Pacific Company was required to show why its rates should not be reduced on all its intrastate passenger business conducted over the main line from a 4-cent to a 3-cent rate, and over the Nevada & California line from a 5-cent to a 4-cent rate. That was the issue framed by the commission itself. Nowhere in the record, prior to the entry of the order complained of, is there a suggestion of any other, or that any reduction on branch lines below a 4-cent per mile rate was contemplated, or that branch-line rates below 4 cents per mile were deemed to be unreasonable. The order of the commission, however, rendered January 24, 1913, required the company to "collect and receive for the transportation of local one-way passengers between points on the main line and the standard-gauge branch lines of the Southern Pacific Company within Nevada local one-way passenger fares that will not exceed 3 cents a mile."

The hearing, both as to the law and evidence, was limited to the issue thus framed. No valid order could be broader than that issue. One holding the contrary might with equal propriety uphold a judgment for $500, where an indebtedness of but $400 was alleged. The order of the commission was broader than the issue. Oregon Navigation Co. v. Fairchild, 224 U. S. 510, 524, 32 Sup. Ct. 535, 56 L. Ed. 863.

On the hearing before the commission there was no testimony, except that of the carriers. The Southern Pacific Company contended that volume of traffic and density of population were the controlling factors in fixing intrastate passenger rates, and to the application of this idea its testimony was mainly directed. This contention was exhaustively investigated by the commission, and in attempting to refute it a considerable amount of data gathered from statistics pub-

lished under the authority of the Interstate Commerce Commission, but not introduced in evidence, was made use of by the commission, and is recited in its opinion. This data was clearly relevant and material, had it been admitted as evidence.

[2] The act of fixing a passenger rate is a legislative function, and this is true of the rate in question. The powers of the commission, however, are not so broad as those of the Legislature. When a rate is fixed by the Railroad Commission of Nevada, it must be in the manner pointed out by the statute. The commission has no power to act in any other way; it has no authority save that conferred by the statute.

[3, 4] Under the Nevada statute, a new rate can be fixed and ordered by the Commission only after the old rate has been investigated and found to be unreasonable, or unjustly discriminatory. Such an investigation must be preceded by notice, and the notice must specify the rate to be investigated. The burden is upon the party attacking any established rate to show that it is unreasonable. The carrier is entitled to be heard at the time and place fixed for the investigation, to have process to compel the attendance of witnesses, and to introduce evidence in explanation or rebuttal of that offered. If the commission may consider data which never has been introduced in evidence, and of which the carrier has received no notice, how can it be either explained or refuted? And of what avail is the right of cross-examination, and the right to offer testimony on matters material to the investigation? Under such circumstances an investigation is of little use, and it is far from conforming to our ideals of either judicial or fair investigation.

In this connection I cannot do better than to quote the language of Mr. Justice Lamar in the case of Interstate Commerce Commission v. Louisville & Nashville R. R. Co., 227 U. S. 88, 92, 33 Sup. Ct. 185, 187 (57 L. Ed. 431):

"Under the statute the carrier retains the primary right to make rates, but if, after hearing, they are shown to be unreasonable, the commission may set them aside and require the substitution of just for unjust charges. The commission's right to act depends upon the existence of this fact, and if there was no evidence to show that the rates were unreasonable, there was no jurisdiction to make the order. Int. Com. Comm. v. Northern Pacific Ry., 216 U. S. 538, 544. In a case like the present the

courts will not review the commission's conclusions of fact (Int. Com. Comm. v. Delaware, etc., Ry., 220 U. S. 235, 251), by passing upon the credibility of witnesses, or conflicts in the testimony. But the legal effect of evidence is a question of law. A finding without evidence is beyond the power of the commission. An order based thereon is contrary to law, and must, in the language of the statute, 'be set aside by a court of competent jurisdiction.' 36 Stat. 551.

"The government further insists that the Commerce Act (36 Stat. 743) requires the commission to obtain information necessary to enable it to perform the duties and carry out the objects for which it was created, and having been given legislative power to make rates it can act, as could Congress, on such information, and therefore its findings must be presumed to have been supported by such information, even though not formally proved at the hearing. But such a construction would nullify the right to a hearing, for manifestly there is no hearing when the party does not know what evidence is offered or considered, and is not given an opportunity to test, explain, or refute. The information gathered under the provisions of section 12 may be used as basis for instituting prosecutions for violations of the law, and for many other purposes, but is not available, as such, in cases where the party is entitled to a hearing. The commission is an administrative body, and, even where it acts in a quasi judicial capacity, is not limited by the strict rules, as to the admissibility of evidence, which prevail in suits between private parties. Int. Com. Comm. v. Baird, 194 U. S. 25. But, the more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended. In such cases the commissioners cannot act upon their own information, as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents, and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding; for otherwise, even though it appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the commission had before it extraneous, unknown, but presumptively sufficient, information to support the finding. United

States v. Baltimore & Ohio S. W. R. R., 226 U. S. 14."

It is unnecessary to consider the objection that the order is not supported by the evidence. The order is clearly broader than the issue, and material data considered by the commission, and on which its order is largely based, was not admitted in evidence. For this reason, without passing on the reasonableness or the unreasonableness of the rates fixed, and because the evidence sufficiently established the probability of irreparable injury, the injunction now in force will be continued pending the suit.