[No. 16614.   Department Two.   November 22, 1921.]

NORTHERN PACIFIC RAILWAY COMPANY et al., Respondents, v. PUBLIC SERVICE COMMISSION et al., Respondents and Appellants, CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY et al., Respondents.[1]

RAILROADS (9)—PHYSICAL CONNECTIONS—PUBLIC NECESSITY—EVIDENCE—SUFFICIENCY. The question of public necessity and reasonableness of an order of the public service commission requiring a physical connection of the tracks of two railroads, made pursuant to Rem. Code, § 8626-61, is determinable by the courts by a consideration of the places and persons interested, the volume of business to be affected, the saving in time and expense to the shipper, as against the cost and loss to the carrier.

SAME (9). On a writ to review an order of the public service commission directing a physical connection between two railroads, it is held that the evidence fails to show a public necessity for the track connection.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered April 9, 1921,

[1]Reported in 202 Pac. 4.

reversing on certiorari an order of the public service commission.  Affirmed.

*The Attorney General, Raymond W. Clifford, Assistant (C. D. Cunningham,* of counsel), for appellants.

*Geo. T. Reid, J. W. Quick, L. B. daPonte, A. C. Spencer, W. A. Robbins,* and *Thos. Balmer,* for respondents.

MAIN, J.—This was an action originally instituted before the public service commission of the state of Washington by the Centralia Commercial Club, a corporation, and was for the purpose of requiring the Northern Pacific Railway to make a physical connection between its tracks and those of the Puget Sound and Willapa Harbor Railway Company at the city of Centralia.  The commission ordered the connection to be made and the cause was taken to the superior court for review, where the order of the commission was reversed and a judgment entered dismissing the proceeding.  From this judgment, the public service commission appeals.

The main line track of the Northern Pacific Railway Company passes through the city of Centralia on the easterly side thereof.  The Puget Sound and Willapa Harbor Railway Company, which is owned and operated by the Chicago, Milwaukee and St. Paul Railway Company, enters the city from the northwest and passes through the westerly side thereof.  The distance between the two lines is approximately one mile. From the Northern Pacific main line there is a spur track extending west and crossing the tracks of the Puget Sound and Willapa Harbor Railway Company. It is at this point that it was sought to have the physical connection made.  The Northern Pacific Railway Company has expended a large amount of money in

constructing terminal facilities, including industrial tracks. The industries of the city are practically all located so as to be accommodated by terminal facili- ties of the Northern Pacific. The terminal facilities of the Willapa Harbor road, which will be referred to as the Milwaukee, are meager, consisting of a frame station and a passing track. If the connection were made it would enable the Milwaukee to make use of the terminal facilities of the Northern Pacific. The Oregon-Washington Railway and Navigation Com- pany and the Great Northern Railway Company by reason of contracts with the Northern Pacific use that company's line and its terminal facilities. In dispos- ing of the case it will be assumed, but not decided, that the public service commission has the power, if public necessities and conveniences require, to order a physi- cal connection of the tracks, even though it would result in the Milwaukee making use of the terminal facilities of the Northern Pacific upon the payment of proper compensation awarded in a proper manner. By the public service commission law, Rem. Code, § 8626-61 (P. C. § 5588), the commission is given power to order a physical connection to be made between the tracks of two roads, when the public interests and conveniences would be subserved by having track con- nections made.

The controlling question in the case then is whe- ther, under the facts of the present case, the public interests and conveniences require a physical connec- tion of the tracks of the Northern Pacific and Milwau- kee. In determining whether the facts are such that a connection should be made, as stated in *Washington ex rel. Oregon R. & N. Co. v. Fairchild*, 224 U. S. 510,

". . . the court must consider all the facts,—the places and persons interested, the volume of business to be affected, the saving in time and expense to the

shipper, as against the cost and loss to the carrier. On a consideration of such and similar facts the question of public necessity and the reasonableness of the order must be determined.''

At the city of Chehalis, which is four miles to the south of Centralia, the roads here involved have joint facilities where traffic may be transferred from one road to the other. At Tacoma the roads have a physical connection of the tracks where traffic may be passed from one to the other. At points on the Milwaukee road as it extends through the state, freight can be moved by the Tacoma or Chehalis gateway at no greater charge than would apply if the interchange was made at Centralia. For competitive traffic, that is, traffic which either one or the other of the roads can handle and make delivery, if the shipper desires to move the business over the Milwaukee he will be required to pay the local rate to Tacoma or Chehalis and the Milwaukee's rate from that city to destination. As to all points which the Northern Pacific can serve and make delivery to, there would be no special advantage to the shipper in having the right to cause his freight to move over the Milwaukee. The vital point is whether, when all the facts are taken into consideration, a physical connection should be ordered in order that the shipper may cause his freight to move from Centralia to any point on the Milwaukee not served by the Northern Pacific and be relieved of the local rate from Centralia to Tacoma.

As we view the evidence, generally speaking, the order for the connection is sought for two principal reasons. One is peculiar to the Eastern Railway and Lumber Company, the plant of which is located on the Northern Pacific and is accommodated by that company's terminal facilities. The other was the belief that, if the connection was made, an adequate supply

of cars could be more easily obtained. As to the supply of cars, the evidence conclusively shows that, if the connection were made, it would not result in the shippers at Centralia obtaining any more cars than in the past when a car shortage exists. The number of cars supplied to any shipping point is a fixed quantity determined by the amount of traffic to be there accommodated. When the car shortage existed, the record does not show a complaint to the body having authority to make the allotment. The Eastern Railway and Lumber Company is engaged in the manufacture of lumber and shingles, but as to its position it appears that its log supply was being exhausted and it desired to purchase timber of the Milwaukee Land Company. That company, however, would not sell the timber unless it was specified in the contract that the products of the mill manufactured therefrom should be shipped over the Milwaukee road. The lumber company also had a contract with the Western Union for cross arms which it was required to ship over the Milwaukee. If the track connection were made, the position of the company was that it could buy the timber, manufacture it, load it upon the Milwaukee cars in the terminal facilities of the Northern Pacific and ship it over the Milwaukee road, and thus avoid a hauling expense from its mill to the line of the Milwaukee.

It seems plain to us that this presents no claim of public necessity. The rival road certainly should not be required to make the physical connection in order that the lumber company might purchase timber from the Milwaukee Land Company, manufacture it and ship it over the Milwaukee road. There were a number of other industries, representatives of which testified, two or three of whose testimonies will be briefly noticed.

The manager of the Pacific Fruit and Produce Company, among other things, testified that if there was a trackage connection between the Milwaukee and the Northern Pacific "there wouldn't be very much advantage only one could buy potatoes at times and have them shipped over the Milwaukee, whereas, as it is, we have to refuse them." Sears Brothers & Russell are engaged in the hay, grain, cement and lumber business, with a warehouse which is accommodated by the terminal facilities of the Northern Pacific. A witness testifying in behalf of this concern was not able to name any point on the Milwaukee not served by the Northern Pacific where they would be able to purchase the commodities handled by them, and could not state approximately the number of cars of freight which they would desire to ship over the Milwaukee.

There is evidence on behalf of a number of other industries, located so as to be accommodated by Northern Pacific terminal facilities, to the same general effect. The evidence fails to show with sufficient definiteness the volume of business to be affected, the saving in time and expense to the shipper as against the cost and loss to the carrier.

We conclude that the trial court was right in holding that the evidence failed to show a public necessity for the track connection.

The judgment will be affirmed.

PARKER, C. J., HOLCOMB, MACKINTOSH, and HOVEY, JJ., concur.